IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DONNA S. TRASK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-3135 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

CHARLES H. EVANS, U.S. Magistrate Judge:

Trask appeals the decision of the Commissioner of the Social Security Administration (SSA), to deny her application for Supplemental Security Income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to a determination of this case by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court affirms the decision of the Commissioner.

STATEMENT OF FACTS

In January 2001, Trask filed an application for SSI, alleging she had

1

been disabled since June 1992, due to hepatitis C, degenerative joint disease, and anxiety. Trask's application was initially denied by the SSA on April 20, 2001. On December 20, 2001, the determination was upheld on reconsideration. Trask disagreed with this determination and requested a hearing before an Administrative Law Judge (ALJ). On December 11, 2002, Attorney Lauren Pashayan represented Trask before the ALJ.

The medical records submitted to the ALJ showed that Trask had a history of anxiety and post-traumatic stress disorder (PTSD) arising from being beaten by her former husband in 1989. She also has reported that she was raped in 2001. E.g., Certified Copy of the Administrative Record (d/e 6) (R.), 291. She also suffers from arthritis in the spine and degenerative joint disease in the spine. She was diagnosed with hepatitis C in November 2002.

In November 2001, Trask was evaluated by a state consulting physician, Dr. Vittal Chapa, M.D. Trask complained to Dr. Chapa of pain in her back and hips, but Dr. Chapa found that she had full range of motion in those joints. He found no evidence of root compression, and no evidence of paravertebral muscle spasms. He found that her lumbosacral spine flexion was normal. He also found that the straight leg raising test was negative bilaterally. R. 201.

In November 2001, Trask also went to the Capitol Community Health Center in Springfield, Illinois. She was referred to the Mental Health Centers of Central Illinois for evaluation. She was diagnosed as having an anxiety disorder.

2

She was rated on the Global Assessment of Functioning (GAF)*[1] scale at 54. R. 268. She was re-evaluated on October 2002. The diagnosis at that time was alcohol dependency in remission, active cannabis dependency and anxiety disorder. Her GAF rating was 55. R. 262.

In November 2001, Trask also underwent a consultative psychiatric evaluation by Dr. Bruce Feldman. Dr. Feldman's mental status examination was generally unremarkable. He found depression, some dysthymia, and a history of alcohol abuse and dependence. R. 203-05.

On October 27, 2003, Trask underwent a neuropsychological evaluation by Dr. Steven Vincent, Ph. D., a licensed clinical psychologist. The ALJ requested this evaluation. Dr. Vincent recorded diagnoses of depression, PTSD, generalized anxiety disorder, and history of marijuana abuse currently in remission. R. 294. Dr. Vincent also completed a mental functional capacity assessment form. He rated Trask slightly limited in ability to understand, remember, and carry out short, simple instructions; and moderately limited in all other functional areas. R. 295-96.

A hearing was held before the ALJ on June 5, 2003. Trask was present with her attorney. Trask testified, along with a friend of hers, Michael Hart, and a vocational expert, Bonnie Gladden. Trask testified that she was living

---

[1]Transcript at R. 268 refers to this as "GAI".

in a trailer with her boyfriend. She did not have a drivers license. She had completed the twelfth grade. She was 42 years old at the time of the hearing. She testified that she had last worked in January 2001. She worked for a temporary employment service as a maid, a factory worker, a waitress, and restaurant worker. She worked an average of two to three days in a seven-day period. She stopped because of her anxiety, depression and chronic pain. R. 349-52.

Trask stated that she cannot sit or stand for prolonged periods of time. She stated that her pain comes and goes, but sometimes it lasts all day long. On a scale of 1 to 10, she put her pain at an 8. She stated that she is careful not to lift more than ten pounds, and that lifting twenty pounds is painful. She also stated that she sometimes has numbness in both her arms and legs. She has pain climbing stairs, and also when bending. She stated that after sitting for twenty minutes, she must reposition herself. She stated that she walks maybe one block a day. R. 357-67.

Trask also testified that she has regular anxiety attacks. She said she had attacks four to five times a day, but now has them two to three times a day. She said the attacks used to last two to three hours each, but now last thirty minutes each. R. 368, 373. She said that her heart races, her breathing becomes sporadic and she feels the need to run or escape. R. 369-71. She said that she works on craft projects to calm herself and relieve the panic. R. 372-

4

73. She said that she no longer drinks alcohol. She said that she had not used marijuana in a month and a half or two months prior to the hearing. She said she smoked marijuana when she could not sleep. R. 378.

Trask stated that she takes care of her personal hygiene. She grows flowers in flower pots outside her home. Once every three months, she collects pine cones for her craft projects. She rides her bike once a week about eight blocks one-way. She studies the Bible daily. She works on craft projects about three or four times a week. She makes her bed and prepares her own meals (although often she has just soup for a meal). She does her own laundry, dishes and house cleaning, including sweeping, mopping, vacuuming and dusting. She goes to the grocery store once a month, but needs someone to go with her to carry the bags. R. 380-87.

Trask's friend, Michael Hart, then testified. He testified that Trask had a hard time keeping her mind focused and would become easily upset. He described situations in which she saw a black man on the street or in an office and would become upset and panicky. She would telephone his home often when she was scared, up to four times in fifteen minutes. She was often worried about having enough of various items, such as canned soup, and would want to keep large amounts on hand. She would start crying for no reason. R. 396-401.

The vocational expert then testified. The ALJ presented her with a series

5

of hypothetical questions:

> Assume a exertional capacity for the first hypothetical is limited to a full range of medium work with no climbing of ladders, ropes, and scaffolds. Other postural functions performed occasionally. The need to avoid environmental hazards such as dangerous heights and machinery. Also limitation to the performance of simple, repetitive tasks.
>
> . . . .
>
> So with respect to those limitations then, also if you could add the vocational factors by assuming that the hypothetical person is of the claimant's age, education and work history. In your opinion, would there be a number of jobs in the regional and/or national economy that such person could perform?

R. 405-06.

The vocational expert listed several jobs, including hand packager, packing/filling machine operator, and assembly work for small products. R. 406.

> The ALJ then asked,
>
> What if I reduce the exertional capacity to light? What would – how would that affect the occupational base you identified? The same jobs in the light category or –

Id. The vocational expert answered that the same jobs would be available, and the numbers would increase because the jobs are basically light work. Id. The vocational expert listed package filling machine operator, hand packers and cashiers. The vocational expert stated that the number would be reduced if the person had a need to have an unrestricted sit/stand option. In that case, the vocational expert said that there were 3,000 packing filling machine operator jobs, 500 hand packager jobs, 7,000 assembly work jobs, and 25,935 cashier jobs. The

6

vocational expert said that the number would not change if the hypothetical exertional level was reduced to sedentary. R. 407.

The ALJ then asked the vocational expert to include, "a restriction to only occasional interaction with the public, co-workers, and supervisors, how would that affect the occupational base that you identified?" Id. The vocational expert said that the cashier work would be "extremely difficult." She said, "The assembly work and factory type of hand packaging and machine operating. That can occur." Id.

## THE DECISION OF THE ALJ

On March 24, 2004, the ALJ issued his written decision, holding that Trask was not disabled for SSI purposes. R. 15-24. The ALJ followed the five-step analysis set forth in the Social Security Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings of such severe impairments are set forth in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the

claimant is able to return to her prior work considering her residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); see Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

The ALJ determined that Trask met the first two steps of the Analysis. She was not currently working, and she had a combination of severe impairments, consisting of anxiety, depression, PTSD, hepatitis C, and degenerative joint disease. R. 16.

The ALJ then analyzed whether her impairments were so severe at Step 3 that she was disabled regardless of her age, education, and work experience. The ALJ analyzed her mental and physical limitations and determined that none of them met or equaled the level of severity of any impairment in any Listing, and that the combination of her conditions did not meet the level of severity of any impairment in any Listing. R. 17-20.

The ALJ then determined that Trask had the RFC to perform light work, which requires the ability to lift up to ten pounds regularly and twenty pounds occasionally. The ALJ determined that Trask was subject to additional physical

8

limitations that would not allow her to perform work requiring climbing of ladders, ropes, or scaffolds, or more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, crawling, or performing work requiring concentrated exposure to hazardous machinery or unprotected heights. The ALJ also found that Trask's psychological impairments would not allow her to perform work that required more than simple and repetitive tasks or more than occasional interaction with co-workers, supervisors, and the public. R. 21-22.

The ALJ then determined that Trask met her burden at Step 4 to show that she could not perform her past work. The ALJ then determined the Commissioner had met her burden at Step 5 by showing that Trask can perform large number of jobs in the national economy. In particular, the ALJ found that she could perform assembler and cashier jobs. The ALJ then determined that Trask was not disabled. R. 20-23. When the SSA Appeals Council denied Trask's request for review of the ALJ's decision on June 4, 2004, the ALJ's decision became the final decision of the Commissioner.

Trask filed the present lawsuit on June 23, 2004. Trask initially filed a Motion to Remand in order to present additional medical evidence to the ALJ. The Court denied this motion. Order entered December 13, 2004 (d/e 12). The parties then filed cross-motions for Summary Judgment and Summary Affirmance.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F. 2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F. 3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The medical evidence supports a finding that Trask has non-physical impairments as a result of her depression, PTSD, and anxiety disorder. Dr. Feldman and Dr. Vincent, however, agree that, even with these conditions, she is able to function, at least in a limited capacity. Dr. Feldman found no restrictions on her ability to function, and Dr. Vincent found only slight limitations in her ability to understand, remember, and carry out short, simple instructions. These reports support the ALJ's determination of Trask's non-physical limitations in her RFC.

Trask's testimony and the medical evidence both support the ALJ's analysis of her physical limitations in her RFC. Dr. Chapa found that Trask

had full range of motion in her back and hips. He found no evidence of root compression, and no evidence of paravertebral muscle spasms. He found that her lumbosacral spine flexion was normal. He also found that the straight leg raising test was negative bilaterally. This medical evidence supports the ALJ's RFC determination. Furthermore, Trask testified that: (1) she can sit for twenty minutes and then must shift her position; (2) she can lift up to 10 pounds, and can lift up to 20 pounds with pain; (3) she does her own vacuuming, mopping and dusting; (4) she also does her own laundry; (5) she prepares her own meals; (6) she regularly rides a bike eight blocks one-way; (7) she takes short walks; and (8) she gathers pine cones every three months. Her level of activity supports a finding that she can perform light work subject to the additional physical restrictions set forth in the ALJ's determination of her RFC.

The vocational expert's testimony supports the finding that a person of Trask's age, education, work experience, and RFC can perform a substantial number of jobs in the national economy. The vocational expert stated that she could perform assembly work and, further, opined that there were significant numbers of those jobs in the regional or national economy. The vocational expert's testimony regarding the assembly jobs is sufficient to support the ALJ's

11

conclusion that the Commissioner met her burden at Step 5 of the Analysis.[2]

Trask asks the Court to consider the additional evidence which she sought to present to the ALJ through her Motion for Remand. For the reasons stated in the December 13, 2004, Order, this Court will not consider that evidence. The evidence presented to the ALJ supports his findings.

THEREFORE, the Commissioner's Motion for Summary Affirmance (d/e 17) is ALLOWED. The Plaintiff's Motion for Summary Judgment (d/e 13) is DENIED. The decision of the Commissioner is affirmed. All other pending motions are denied as moot. This case closed.

IT IS THEREFORE SO ORDERED.

ENTER: September 29, 2005.

    FOR THE COURT:

                        s/Charles H. Evans
                        CHARLES H. EVANS
                        UNITED STATE MAGISTRATE JUDGE

---

[2] The ALJ's finding that Trask can work as a cashier, however, is not supported in the record. The ALJ found that her psychological limitations would not allow her to deal with the public. When asked, the vocational expert stated that cashier work would be extremely difficult if she could have only occasional contact with the public. The number of assembly jobs that exist in the national economy, however, support the ALJ's conclusion that the Commissioner met her burden at Step 5 of the Analysis.